**SO ORDERED.**

**SIGNED this 10 day of November, 2010.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **SOUTH BAY PROPERTIES, LLC** | 10-04922-8-SWH |
| **DEBTOR** | |

### ORDER DENYING MOTION TO DISMISS

The matter before the court is the motion to dismiss filed by Milone & Macbroom, Inc. ("M&M"), asserting that the debtor, South Bay Properties, LLC ("South Bay"), filed this case in bad faith, and the debtor's objection thereto. Ronald and Bonnie Charlton and Bayside Property, Inc. (collectively, "Bayside") filed a response in support of the M&M motion to dismiss. A hearing was held in Raleigh, North Carolina, beginning on September 20, 2010, and concluding on September 28, 2010. For the reasons that follow, the court will deny the motion.

### STATEMENT OF CASE

South Bay filed a voluntary petition under chapter 11 on June 18, 2010. M&M filed a motion to dismiss pursuant to 11 U.S.C. § 1112(b) on July 6, 2010, contending that the case was filed in bad faith. On August 23, 2010, Bayside filed a response in support of M&M's motion to dismiss. A hearing was held on August 24, 2010, and the motion to dismiss was provisionally denied by order dated September 8, 2010. The court concluded that final determination on the

motion to dismiss should be deferred to allow an evaluation of the debtor's plan, which was to be filed by September 16, 2010. The motion was re-calendared for rehearing and final determination on September 20, 2010.

On August 27, 2010, Bayside filed a motion for relief from stay or, in the alternative, for adequate protection. On September 13, 2010, M&M filed a limited objection to Bayside's motion, which objected to the extent that Bayside sought a determination that it held a first priority security interest in the South Bay Development, or to the extent that Bayside sought a determination as to the priority of Bayside's lien vis-a-vis the liens of other creditors, including M&M. Also on September 13, 2010, South Bay filed an objection to Bayside's motion for relief from stay. The hearing on the motion for relief from stay was calendared along with the motion to dismiss, and the hearing on both motions commenced on September 20, 2010. At the conclusion of that hearing, Bayside requested and was granted a continuance on its motion for relief from stay. After day two of the hearing, on September 28, 2010, the debtor, with the consent of Bayside, filed a written motion to again continue the stay hearing. Closing arguments on the motion to dismiss were heard on September 28, 2010.

On September 21, 2010, prior to hearing, the debtor withdrew its Motion to Obtain Post Petition Financing, which it had filed on July 14, 2010. M&M, Bayside, and the Bankruptcy Administrator had objected to the motion. In the motion, the debtor had requested permission to borrow approximately $3.5 million from the Hartford Fire Insurance Company & Hartford Casualty Insurance Company ("Hartford") for the purpose of completing the infrastructure at South Bay Development and to grant Hartford a first priority security interest in the property.

## BACKGROUND

South Bay is a North Carolina limited liability company with its principal place of business in Wake County, North Carolina. South Bay is engaged in the business of developing a residential community in Georgetown, South Carolina. This community, its only asset, is known as the South Bay Development. Mr. Kyle Corkum is the registered agent and manager of South Bay.

Ronald and Bonnie Charlton are individuals who own and manage Bayside Property, Inc. The Charltons are the previous owners of the debtor's property. The Charltons entered into a purchase contract with the debtor whereby the debtor agreed to purchase 80 acres of real estate from Bayside for $20.5 million for the purpose of developing a residential subdivision (the South Bay Development). When the debtor was unable to obtain traditional financing for the purchase and development of the property, Bayside agreed to provide the financing. On September 12, 2007, the debtor executed a promissory note (the "Note") payable to Bayside in the amount of $14,580,662.92, to be repaid with 15% interest per annum and with a maturity date of September 30, 2008. To secure the Note, the debtor executed a mortgage in favor of Bayside on the South Bay Development. The debtor sold 54 lots and paid the proceeds to Bayside. Bayside contends the balance owed on the Note, as of the petition date, is $15,282,370.04.

Prior to execution of the Note, on July 17, 2007, the debtor purchased a Subdivision Performance Bond (the "Bond") from the Hartford Casualty Insurance Company ("Hartford") in favor of the city of Georgetown. Hartford issued the Bond to secure completion of the infrastructure at the South Bay Development. In accordance with the Bond, Hartford is obligated to pay $7,882,350.00 to the city of Georgetown in the event the debtor fails to complete the infrastructure at the South Bay Development.

Despite some pre-sales of lots to third parties, the drop in the real estate market ultimately caused the debtor to default under the Note.  No sales have occurred, nor have any improvements to the South Bay Development been made, since the first quarter of 2008.  Additionally, the lot owners have brought claims against the debtor, its principals, Bayside, Hartford, and the city of Georgetown seeking to enforce the Bond issued by Hartford.  Those claims are still pending in state courts.

M&M provided professional engineering services to Landquest, LLC, in connection with its development of real estate projects, one of which is the South Bay project.  A portion of the debt owed to M&M by South Bay is evidenced by a promissory note executed by the debtor, the debtor's principal, Mr. Corkum, and approximately twenty-five other entities owned and controlled by Mr. Corkum.  For approximately two years, M&M has been attempting to collect from Mr. Corkum the amounts owed to it for services M&M provided for the debtor and for other Corkum-related projects.  Prior to the petition date, M&M had filed three state court actions (two in North Carolina and one in South Carolina) to enforce promissory notes and liens against Mr. Corkum and his related entities, including, in two of those actions, the debtor.

## DISCUSSION

Whether a chapter 11 case may be dismissed for lack of good faith is determined by application of a two-part test derived from the Fourth Circuit's decision in Carolin Corp. v. Miller, 886 F.2d 693, 700-01 (4th Cir. 1989).  The movant must satisfy a two-pronged inquiry and demonstrate "*both* objective futility and subjective bad faith." Id. at 700.  A showing of either one, but not the other, is insufficient.  The court explained that

[t]his means that if the only question raised is whether a reorganization is

4

>    realistically possible, *i.e.*, if there is no question of the petitioner's subjective good
>    faith in filing, threshold dismissal of the petition is not warranted. In those
>    circumstances the question of ultimate futility is better left to post-petition
>    developments. By the same token, even if subjective bad faith in filing could
>    properly be found, dismissal is not warranted if futility cannot also be found.

Id. at 701.

Objective futility may be demonstrated where the court's inquiry reveals that "there is no going concern to preserve . . . and . . . no hope of rehabilitation." Id. at 701 (citation omitted). Subjective bad faith is determined through inquiry into "whether the petitioner's real motivation is 'to abuse the reorganization process' and 'to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities.'" Id. at 702 (citation omitted).

M&M and Bayside argue that there is substantial evidence of objective futility. They note that South Bay has been "essentially defunct" for almost two years and is under threat of administrative dissolution by the North Carolina Secretary of State; the debtor has only one asset and is not attempting to develop or conduct any other business with it; there is no going concern to preserve and no realistic possibility of reorganization; there is a "massive deficiency" between the debtor's asserted value of the property at $6 million and its debt of $9.1 million, which is secured by a purchase money mortgage on the property; there will not be an accepting impaired class at confirmation; the plan is not feasible; the plan discriminates unfairly; and, finally, the plan is not fair and equitable. Together, the movants argue, these factors illustrate objective futility.

Additionally, M&M and Bayside allege that the debtor had improper motivation in filing the bankruptcy, and thus that subjective bad faith is involved. M&M specifically contends that the case was filed to frustrate and delay M&M in its efforts to proceed against Corkum and his related

entities.  M&M further states that bad faith should be implied when the debtor has abused the bankruptcy process so that the debtor obtains the benefits of the automatic stay without the intent or ability to reorganize.  M&M and Bayside both argue that the debtor's bad faith is evidenced by its filing of the motion to obtain post-petition financing, which they contend unfairly elevates the rights of Hartford in an effort to decrease the liability of the guarantors.  Based on the evidence in this case, the court concludes that M&M has not satisfied either prong of the Carolin test.

The court turns first to Carolin's "objective futility" standard.  M&M and Bayside assert that the absence of an "end game" (what happens if the lots do not sell as anticipated) and the present apparent lack of an impaired accepting class support a finding of objective futility.   On the other hand, the debtor contends that there *are* impaired classes, with substantial claims, willing to accept the plan: both Hartford and another creditor, Stantec Consulting Services,[1] will approve the plan. The plan probably will need to be modified before confirmation, and confirmation is certainly not guaranteed.  However, that decision will be made after a confirmation hearing, and not summarily on a motion to dismiss. While evaluating either prong of the Carolin test, it is "better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation."  Carolin, 886 F.2d at 701. Certainly, M&M has not established that "there is no reasonable probability" that the debtor will, eventually, successfully emerge from bankruptcy proceedings.  See, e.g., In re Cohoes Indus.

---

[1] Stantec Consulting Services ("Stantec") is a creditor of the debtor for engineering and related services at the debtor's real property.  Stantec filed a mechanic's lien in the Register of Deeds Office in Georgetown, South Carolina in December 2007.  The lien reportedly has an outstanding balance of $59,397.75 plus attorney's fees, and the debtor estimates Stantec's claim to be $60,540.65.

Terminal, Inc., 931 F.2d 222, 227 (2d Cir. 1991) (construing Carolin, 886 F.2d at 698-702).  At this stage, the debtor only needs to show that it is possible to reorganize.

M&M has also not shown subjective bad faith.  The debtor contends that the plan was filed in good faith, and notwithstanding the creditors' allegations that the case was filed to frustrate their efforts, Mr. Corkum testified that he filed the petition under chapter 11 only as a last resort to halt the litigation proceeding against him, and after negotiations failed.  M&M maintains that the debtor exhibited bad faith when it filed a post-petition financing motion, which in M&M's view would elevate Hartford, an unsecured creditor, above the other unsecured creditors.  By seeking authority to grant Hartford a secured position in the property, M&M argues, the debtor would effectively reduce the exposure of the guarantors.  At the hearing, however, credible evidence was introduced to show that the post-petition financing motion was a compromise entered into between the debtor and Hartford, and would have resolved both the issue of funding for development of the project and the state court litigation.  Furthermore, the motion to obtain post-petition financing was withdrawn on September 22, 2010.  In this case, M&M has not established an adequate basis on which to conclude that the debtor acted with subjective bad faith in filing the petition.  "At this relatively early stage, absent a showing of bad faith and complete futility, there is no reason to dismiss" the case.  In re Harmony Holdings, LLC, 393 B.R. 409, 420 (Bankr. D. S.C. 2008).

## CONCLUSION

Taking into account the totality of the circumstances, the court finds that the evidence at this juncture does not support a finding of either objective futility or subjective bad faith.  The debtor has a right to proceed to confirmation, where the confirmation standards of § 1129 will be applied.  For the reasons above, the motion to dismiss is **DENIED.**  Nothing herein shall be construed,

however, as a limitation on the rights of the creditors to file another motion to dismiss or similar pleading should circumstances in the case change.

**SO ORDERED.**

**END OF DOCUMENT**